787 So.2d 530 (2001)
STATE of Louisiana in the Interest of R.C., R.C., and D.E., Plaintiff-Appellant,
v.
Billy R. EVERETT, Defendant-Appellee.
No. 34,986-JAC.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
*532 Audie Jones, Northwest Regional Attorney, Department of Social Services, Haughton, Counsel for Appellant.
Michael Wainwright, Shreveport, Counsel for R.C., R.C., and D.E.
Dan Keel, Counsel for Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
BROWN, J.
The State of Louisiana through the Department of Social Services appeals the dismissal of its petition to terminate the parental rights of Billy R. Everett. For the reasons set forth herein we reverse and remand.

Facts and Procedural History
The three minor children of Billy R. Everett and Ginger Clarke have been in the care of the State since October 10, 1997, when an Instanter Order was issued removing the children from Ms. Clarke's care due to neglect.[1] Everett was at that time and is currently in prison serving an 18 year sentence for the attempted murder of Ginger Clarke. The children were adjudicated to be in need of care and custody was awarded to the State.
In child in need of care cases, if the legal custody of a child is awarded to the State, the order is subject to federal regulations known as "Permanency Planning" requirements, found at 42 U.S.C. § 1601, et seq. The intent of these federal regulations is to insure periodic review of the status of children placed in the public foster care system and to secure a permanent placement for them as soon as possible. There are two components of permanency planning. The first is the initial case plan and its review hearing process (La.Ch.C. arts. 687-700); the second is the identification of a permanent plan for the child and its review hearing process (La.Ch.C. arts. 701-711). When appropriate, case review hearings and permanency hearings may be heard simultaneously (La.Ch.C. art. 711).
In December 1997, both Everett and Ms. Clarke stipulated that their children were in need of care in accordance with La.Ch.C. art 647. Both parents stipulated to the dispositional report and case plan submitted by the State. At that time, the plan was reunification with Ms. Clarke; the plan was approved by the juvenile court with the matter set for review on April 20, 1998. On that date, the plan was submitted and approved and further judicial review was scheduled.
A contested hearing was held on January 28, 1999; at that time the State submitted a recommendation for a permanent *533 plan that would place guardianship of the children with their foster parents. This was due to the Ms. Clarke's failure to comply with the requirements of the plan for reunification. Everett objected and sought to place guardianship with Marcia Crnkovic, a childhood friend. Everett stated that he had not seen Ms. Crnkovic since childhood and only recently renewed their friendship while he was incarcerated in Wade Correctional Center.
Evidence was received, including therapy reports recommending transfer of guardianship to the foster parents. Further, the children testified in chambers of their desire to stay with their foster parents. The court found that the State's plan of working toward guardianship of the children with their respective foster parents was in the best interest of the children. Judgment was rendered on April 22, 1999, and Everett appealed. This court affirmed the juvenile court's decision. State ex rel. R.C. v. Clarke, 33,023 (La.App. 2d Cir.10/27/99), 743 So.2d 843.
In October 1999, another case review hearing was held with Everett again contending that custody be given to Ms. Crnkovic. Everett's request was again denied and the State's plan of permanent placement with the foster parents was approved. Everett appealed this judgment. This court again affirmed the juvenile court's decision in an unpublished opinion. State of Louisiana in the Interest of R.C., R.C. and D.E. v. Everett, 33,809 (La.App. 2d Cir. 08/23/00) (unpublished opinion).
The children thrived in their new environment and significantly bonded with their foster parents who expressed a desire to adopt. On August 18, 2000, the State filed a petition to terminate the parental rights of Everett and Ms. Clarke. At the parties' request, the proceedings were bifurcated and a hearing as to the allegation involving Everett was held in December 2000.[2] The juvenile court found that the children have bonded with their respective foster parents and have had their problems addressed. Although the foster parents desired to adopt, they readily agreed to continue to care for the children regardless of whether they are certified for adoption or whether long term foster care or guardianship is approved. Following the presentation of the State's case in chief, Everett's attorney moved for an involuntary dismissal. After taking the motion under advisement, the juvenile court ruled that Everett's plan to place the children with Marcia Crnkovic (Everett), whom he has now married, was reasonable and rendered judgment in Everett's favor, dismissing with prejudice the petition to terminate his parental rights. Even so, the court found that the best interest of the children is served by their remaining with the foster parents. It is from this judgment that the State has appealed. For the reasons set forth below, we reverse and remand the matter to the juvenile court.

Discussion
The paramount consideration in termination proceedings is the best interest of the child. State ex rel. J.A., 99-2905 (La.01/12/00), 752 So.2d 806. As noted by the supreme court in State ex rel. J.A., supra, the State need only establish one of the grounds set forth under La.Ch.C. art. 1015, but the judge must also find that the termination is in the best interest of the child as required by La.Ch.C. art. 1039. See also State in the Interest of M.L. & P.L., 95-0045 (La.09/05/95), 660 So.2d 830. The State must prove the elements of the *534 enumerated ground by clear and convincing evidence in order to sever the parental bond. La.Ch.C. art. 1035(A); State ex rel. J.A., supra.
The State sought to terminate Everett's parental rights pursuant to La.Ch.C. art. 1015(6), which provides for termination when:
The child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child's age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care. (Emphasis added.)
Everett's plan involved the placement of his three minor children with his new wife, Marcia Crnkovic Everett, a childhood friend with whom he became reacquainted (and whom he married) while in prison. While Mrs. Everett is a nurse, mother and home owner, she is a stranger to the children.
We agree with the trial court that the issue of reasonableness of a proposed plan is not whether there is a better plan. Instead, the focus is upon whether the parent's plan is a reasonable alternative. In this case, Everett's proposed plan has consistently been found not to be in the best interest of the children.
Everett was convicted of the attempted murder of the mother of his three minor children and is currently serving an 18 year hard labor sentence. As noted in the 1997 revision comments to La.Ch.C. art. 1015, a parent's lengthy incarceration is a widely recognized justification for termination of parental rights and has been in Louisiana since 1981. This ground acknowledges the disruption of the parent-child relationship that inevitably occurs when the parent is convicted and sentenced to a long term of imprisonment. Furthermore, article 1036(D) of the Children's Code recognizes a presumption that a five-year prison term during which children are in foster care is a substantial period of time that the parent-child relationship will be irreparably disrupted and the children will be at grave risk of substantial harm.
In this case, the juvenile court found that the facts of record demonstrated that Everett's plan for placement of the children with Marcia Crnkovic, although not the better disposition, was reasonable. A previous juvenile judge, as well as two panels of this court found the same plan by Everett to be unacceptable.[3] We note that the present juvenile judge also rejected this plan in favor of the children remaining with their foster parents, who have expressed their attachment to the children as well as a commitment to continue caring for them regardless of the court-approved case plan goal (be it certification for adoption, long-term foster care or continued guardianship).
Whether a termination of parental rights is warranted is a question of fact. State in the Interest of K.N.F., 96-390 (La.App. 3d Cir.07/17/96), 677 So.2d 166. An appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. In re A.J.F., 00-0948 (La.06/30/00), 764 So.2d 47; State ex rel. A.N.B., 33,335 (La.App. 2d Cir. 01/26/00), 750 So.2d 413; State in the Interest of S.D. v. Moore, 31,192 (La.App. 2d Cir. 08/19/98), *535 717 So.2d 265. The discretion afforded the trial court must be exercised in good faith and be guided by the statutes. Where the exercise of discretion is arbitrary and the judgment is unjust, it will be set aside. State ex rel. A.N.B., supra.
We emphasize that our judicial system does not simply protect parental rights, but is required to protect the rights of children to thrive and survive. State in the Interest of S.M., 98-0922 (La.10/20/98), 719 So.2d 445, on remand, 99-0526 (La.App. 4th Cir.04/28/99), 733 So.2d 159, writ denied, 99-2127 (La.07/21/99), 747 So.2d 36. Furthermore, children have an interest in the termination of rights that prevent adoption and inhibit their establishment of secure, stable, long term, continuous family relationships. Id.; State in the Interest of J.M., 30,302 (La.App.2d Cir.10/29/97), 702 So.2d 45, writ denied, 97-2924 (La.02/06/98), 709 So.2d 736. Children have a profound interest in being in a home where they will receive proper parental care. State in the Interest of S.M., supra.
The procedural history of this case shows that both juvenile judges, as well as two different panels of this court, have found the State's plan to permanently place guardianship with the foster parents to be in the best interest of the children. Everett's continued insistence at placing the children with a stranger is not reasonable. On this record, termination of Everett's parental rights and certification for adoption is in the best interest of the children. However, inasmuch as we have found that the juvenile court erred in granting Everett's motion for involuntary dismissal based upon the conclusion that the state failed to carry its burden of proof, we are constrained to remand the matter to the trial court for completion of trial.

Conclusion
For the reasons set forth above, the judgment of the trial court is REVERSED and the matter is REMANDED.
NOTES
[1] We note the following factual information from our previous opinion State ex rel. R.C. v. Clarke, 33,023 (La.App. 2d Cir.10/27/99), 743 So.2d 843, 845:

On October 9, 1997, the Department received a call of neglect concerning R.C., R.C. and D.E. An investigation revealed that the mother, Ginger Clarke, had been arrested for battery on a police officer and resisting arrest which occurred when the officer was investigating the stabbing of Ms. Clarke's boyfriend. The officer reported that Ms. Clarke was intoxicated at the time of questioning and became violent, hitting the officer. The officer reported that the home was deplorable. There were no window panes and the door would not close completely. Bare mattresses lay on the floor among trash and clothing. The house was roach infested. The officer observed the youngest child, D.E., age 3, eating a roach. There was no food in the house. The children were filthy and unkempt. The officer also noted that D.E. had burn marks on the bottoms of his feet and that all three children appeared to have impetigo sores on them. Mr. Everett was incarcerated at that time and family members refused to take care of the children.
[2] The State was allowed to proceed against Everett first, intending to pursue termination of Ms. Clarke's rights only if the court ordered termination of Everett's parental rights.
[3] The juvenile judge originally assigned to this case retired.